1 | Donna M. Rutter, No. 145704
2 | Mani Sheik, No. 245487
**MILLER LAW GROUP**
3 | 111 Sutter Street, Suite 700
San Francisco  CA  94104
4 | Telephone: (415) 262-8353
Facsimile: (415) 464-4336
5 |
6 | James D. Emerson, No. 042031
**EMERSON, COREY, SORENSEN,
CHURCH & LIBKE**
7 | 2520 West Shaw Lane, Suite 102
Fresno, CA 93711
8 | Telephone:  (559) 432-7641
Facsimile:  (559) 432-7639
9 |

10 | Attorneys for Plaintiff, THOMAS PETROLEUM, LLC d/b/a EASTERN SIERRA OIL

11 |                    UNITED STATES DISTRICT COURT FOR THE

12 |                        EASTERN DISTRICT OF CALIFORNIA

13 | THOMAS PETROLEUM, LLC d/b/a        Case No. 1:11-CV-00902-LJO-JLT
EASTERN SIERRA OIL,
14 |                                    **PLAINTIFF'S TRIAL BRIEF**
               Plaintiff,
15 |                                    Trial:  12/04/12
     vs.                               Time:  8:30 a.m.
16 |                                    Dept:  CRTM-4
KENNETH LLOYD, an individual, E.S. OIL,
17 | LLC, a California limited liability company,
and DOES 1-30,
18 |                                    TRIAL DATE: December 4, 2012
               Defendants.            COMPLAINT FILED:   June 2, 2011
19 |

20 |                              __Introduction__

21 |        This matter concerns a disloyal supervisor.  Kenneth Lloyd was employed as the

22 | Terminal Manager for Thomas Petroleum's operation in Bishop, California, where it used

23 | the business name *Eastern Sierra Oil*.   Thomas Petroleum relied upon Kenneth Lloyd to

24 | represent the company in the area, and paid him well.  During the same time he should

25 | have been working for the benefit of his employer, Mr. Lloyd was setting up his own

26 | company, the invitingly named "*E.S. Oil*."  Mr. Lloyd misused the trust placed in him,

27 | utilizing Thomas Petroleum's resources for his own enterprise.   Under Kenneth Lloyd's

28 | stewardship of the Bishop operation, two critical customers were lost, only to be re-

captured by *E.S. Oil*.  Mr. Lloyd had concealed and misrepresented critical facts regarding contacts with these customers.  His company could then capitalize on the opportunities that had been presented to Kenneth Lloyd, only because of his position with Thomas Petroleum.   Kenneth Lloyd's actions were devious and methodical, and cost Thomas Petroleum two of its most important customers in the area.  By way of this trial, Thomas Petroleum is seeking redress for the lost business, the lost goodwill, and the harm done when Mr. Lloyd pilfered its business from the inside.

**General Chronology**

| | |
|---|---|
| 1996 - 2009 | Haycock Petroleum Company is doing business in the Bishop area as Eastern Sierra Oil.  Kenneth Lloyd is initially hired as a salesperson and then becomes general manager in Mammoth Area. |
| Spring 2005 | Haycock is sold to Flying J.  Flying J ultimately goes into bankruptcy. |
| October 2009 | Thomas Petroleum purchases Haycock, and acquires the right to do business the name *Eastern Sierra Oil.*   Thomas Petroleum also acquires Haycock's lease in Bishop.  Kenneth Lloyd is made Terminal Manager for the operation, the highest ranking employee in Bishop. |
| Early 2010 | Kenneth Lloyd proposes to his superiors at Thomas Petroleum, John Saxon and Steve Moore, that Thomas Petroleum negotiate with the Bishop Paiute Indian Tribe to expand the Tribe's retail gasoline operations |
| June 2010 | Kenneth Lloyd prepares E.S. Oil's Operating Agreement. |
| October and November 2010 | Kenneth Lloyd renegotiates Thomas Petroleum's lease and makes E.S. Oil the tenant. |
| January/February 2011 | The Los Angeles Department of Water & Power (LADWP) informs Kenneth Lloyd that the Department is soliciting bids. |
| January 2011 | Lloyd begins negotiations with Nella Oil Company, Thomas Petroleum's direct competitor, to be the supplier for E.S. Oil. |

| | |
|---|---|
| March 15, 2011 | Kenneth Lloyd changes the bid being prepared on Thomas Petroleum's behalf for submission to the LADWP, into a bid to be submitted for E.S. Oil. |
| April 14, 2011 | The Bishop Paiute Indian formally considers a contract with E.S. Oil. |
| April 17, 2011 | Mr. Lloyd sends a letter to Mr. Walt Dwelle of the Nella Oil Company soliciting credit for the venture.  Mr. Lloyd includes a copy of the Petroleum Supply and Transportation Agreement, and informs Mr. Dwelle that it is for his eyes only. |
| April 21, 2011 | Representative for the Bishop Paiute Indian signs Petroleum Supply and Transportation Agreement with E.S. Oil. |
| April 27, 2011 | *Meeting at Whiskey Creek Restaurant* - Kenneth Lloyd, using his authority as Terminal Manager of the Thomas Petroleum operation, calls a mandatory all-staff meeting to inform Thomas Petroleum employees at the location of his plans, including his intention to "focus [his] attention" on and "go after" Thomas Petroleum's top customers, like the Paiutes and the LADWP.  Kenneth Lloyd directed the staff not to reveal those plans by way of a "non-disclosure agreement." |
| May 4, 2011 | Kenneth Lloyd flies to Salt Lake City to surprise Mr. Moore with Mr. Lloyd's resignation.  This flight is charged by Kenneth Lloyd to Thomas Petroleum.  Prior to this meeting, Kenneth Lloyd clears his company laptop of data. |

## **Discussion of Pertinent Authority**

**I.    According to California Law, Kenneth Lloyd may be liable for the breach of the loyalty he owed to Thomas Petroleum.**

The elements of a cause of action for breach of a duty of loyalty are well established: "(1) the existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach." (*Huong Que, Inc. v. Luu,*

(2007) 150 Cal. App. 4th 400, 410 [58 Cal.Rptr.3d 527].)   California Labor Code section 2863 states,

> An employee who has any business to transact on his own account, similar to that intrusted to him by his employer, shall always give the preference to the business of the employer.

"[A]n employer has the right to expect the undivided loyalty of its employees. The duty of loyalty is breached, and may give rise to a cause of action in the employer, when the employee takes action which is inimical to the best interests of the employer." (*Stokes v. Dole Nut Co.* (1995) 41 Cal. App. 4th 285, 295 [48 Cal.Rptr.2d 673].)

## II.   Under California law, Kenneth Lloyd was a fiduciary for the interests of Thomas Petroleum.

"A fiduciary relationship is any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party."   (*Wolf v. Superior Court* (2003) 107 Cal. App. 4th 25, 29 [130 Cal.Rptr.2d 860](internal quotations and citations omitted).)   "There are *two kinds* of fiduciary duties-those imposed by law and those undertaken by agreement."   (*GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc.* (2000) 83 Cal.App.4th 409, 416 [99 Cal.Rptr.2d 665], disapproved of on other grounds by *Reeves v. Hanlon* (2004) 33 Cal.4th 1140 [17 Cal.Rptr.3d 289].)   "Fiduciary duties are imposed by law in certain technical, legal relationships…." (*GAB Business Services, Inc., supra,* 83 Cal.App.4th at p. 416.)   "A fiduciary duty is undertaken by agreement when one person enters into a confidential relationship with another."   (*Id.* at p. 417.)   "…[A]n officer who participates in management of the corporation, exercising some discretionary authority, is a fiduciary of the corporation as a matter of law. Conversely, a 'nominal' officer with no management authority is not a fiduciary. Whether a particular officer participates in management is a question of fact. We expect that in most cases this test will be easily met. And, as in all legally recognized fiduciary relationships, once this factual prerequisite is established, the law imposes a fiduciary duty." (*Id.* at pp. 420-421.)   "…[T]he test for

///

fiduciary status is not control; it is, instead, merely *participation* in management.  (*Id.* at p. 422 ("This low threshold is easily met in this case.").)

"The fiduciary duties a manager owes to the limited liability company and to its members are those of a partner to a partnership and to the partners of the partnership." (Cal. Corp. Code § 17153.)

Kenneth Lloyd was Thomas Petroleum's Terminal Manager in Bishop—the highest-ranking employee there.  He described himself as the "captain of the ship."   Mr. Lloyd participated in management, especially when it came to the supervision of the five other Thomas Petroleum employees in Bishop.  He actively participated in hiring and firing decisions and in setting salaries and bonuses of other Bishop employees.  Defendant also exercised discretionary authority in Bishop, where he oversaw budgets, sales, day-to-day operations, management, safety, inventory, facility upkeep, and maintenance.  He was also intimately involved in decisions about how to draft bids to potential customers or for potential projects, and what customers to target in Bishop.  One of Kenneth Lloyd's duties was drafting and submitting such bids, and he had authority to enter into contracts on Thomas Petroleum's behalf.

## III.   __Thomas Petroleum may seek remedy for the improper use of its trade secrets.__

Misappropriation of trade secrets is an intentional tort defined in California's Uniform Trade Secrets Act, Cal. Civil Code § 3426.1, subdivision (b), which explains that "misappropriation" can occur in several ways, including:

> (1) when a person acquires a trade secret and knows or has reason to know that the trade secret was "acquired by improper means" (Cal. Civil Code § 3426.1, subd. (b)(1);
> (2) when a person discloses or uses a trade secret without consent after having used improper means to acquire that trade secret (Cal. Civil Code § 3426.1, subd. (b)(2)(A)); or
> (3) when a person discloses or uses a trade secret without consent and at the time of disclosure or use knew or had reason to know that his or her knowledge of the trade secret was "(i) [d]erived from or through a person who had utilized improper means to acquire it; [¶] (ii) [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or [¶] (iii) [d]erived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use…."  (Cal. Civil Code § 3426.1, subd. (b)(2)(B).)

1    A misappropriation claim "requires the plaintiff to demonstrate: (1) the plaintiff owned

2    a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret

3    through improper means, and (3) the defendant's actions damaged the plaintiff."  (*Cytodyn,*

4    *Inc. v. Amerimmune Pharmaceuticals, Inc.* (2008) 160 Cal. App. 4th 288, 297.)

5    **IV.    The court adjudicated that Defendants used the *Eastern Sierra Oil* name in**

6    **violation of trademark law.**

7    Trademark law aims to protect trademark owners from a false perception that they

8    are associated with or endorse a product."  (*Mattel Inc. v. Walking Mt. Prods.* (9th Cir.

9    2003) 353 F.3d 792, 806.)   "Trade-mark and trade name infringement, or unfair

10   competition, preclude one from using another's distinctive mark or name if it will cause a

11   likelihood of confusion or deception as to the origin of the goods."  (*New W. Corp. v. NYM*

12   *Co. of California, Inc.* (9th Cir. 1979) 595 F.2d 1194, 1201.)

13   The elements necessary to establish trademark infringement and unfair competition

14   are the same.  (*Brookfield Comm., Inc. v. West Coast Enter. Corp.* (9th Cir. 1999) 174 F.3d

15   1036, 1046 n. 6; p. 1047, fn. 8.)  Federal trademark infringement claims under Section 32

16   of the Lanham Act apply to registered marks, while unfair competition claims under Section

17   43, subdivision (a), of the Lanham Act apply to both registered and unregistered marks,

18   and protect against a wider range of practices.  (*Brookfield Comm., Inc. v. West Coast*

19   *Enter. Corp.*, supra, 174 F.3d at p. 1047, fn. 8.)   Plaintiff did not register the trademark, so

20   this case falls under Section 43 of the Lanham Act.

21   Plaintiff was required to "prove [1] the existence of a trademark and [2] the

22   subsequent use by another in a manner likely to create consumer confusion." (*Comedy III*

23   *Prod., Inc. v. New Line Cinema* (9th Cir. 2000) 200 F.3d 593, 594.)   "The traditional

24   elements of a claim for trademark infringement are ownership of a protectable mark and

25   likelihood of confusion arising from defendant's use of the mark." (*Protectmarriage.com v.*

26   *Courage Campaign* (E.D. Cal. 2010) 680 F. Supp. 2d 1225, 1228, citing *Applied Info. Scis.*

27   *Corp. v. eBay, Inc.* (9th Cir. 2007) 511 F.3d 966, 969).

28   ///

In ruling on the Plaintiff's motion for summary judgment, the court adjudicated in favor of Plaintiff's trademark claim for Defendants' use of the name "Eastern Sierra Oil" in the LADWP bid.  (Doc. 52, p. 31:8-15.)

**V.  Thomas Petroleum can also seek recovery for Defendants' Unjust Enrichment.**

A claim of unjust enrichment requires proof that defendant received a benefit as well as that defendant unjustly retained the benefit at plaintiff's expense.  (*Lectrodryer v. SeoulBank* (2000) 77 Cal. App. 4th 723, 726 [91 Cal.Rptr.2d 881].)

**VI.  California law also permits recovery for Kenneth Lloyd's misrepresentations and concealments.**

Actual fraud or intentional misrepresentation requires (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) damage. (*Roddenberry v. Roddenberry* (1996) 44 Cal. App. 4th 634, 666 [51 Cal.Rptr.2d 907].) Fraud and deceit based on concealment requires (1) concealment or suppression of a material fact; (2) a duty to disclose the fact; (3) intentional concealment or suppression of the fact with the intent to defraud; (4) that the plaintiff must have been unaware of the fact and would not have acted as it did if it had known of the concealed or suppressed fact; and (5) damage.  (*Lovejoy v. AT&T Corp.* (2004) 119 Cal. App. 4th 151, 157-58 [14 Cal.Rptr.3d 117].)

Plaintiff will show at trial that Kenneth Lloyd both intentionally misrepresented and concealed material facts.  Mr. Lloyd told Mr. Moore that his discussions with the Paiutes regarding the ethanol project had ended due to a "lack of communication" on the Paiutes' part.  The emails Defendants produced in this litigation prove Lloyd was misrepresenting the facts, because he communicated with the Paiutes on a regular basis—sending emails, attending meetings, and revising project plans over the course of several months.  As examples of concealment, Kenneth Lloyd obtained the lease in E.S. Oil's name; Mr. Lloyd met with and negotiated a distribution agreement with Nella Oil Company on E.S. Oil's behalf; and he solicited the business of Thomas Petroleum's biggest customers.  The best example of Kenneth Lloyd's concealment of a material fact is his failure to inform

anyone at Thomas Petroleum of the deadline for submitting a bid to the LADWP.  This omission cost Thomas Petroleum the opportunity to submit a $1.15 million bid on the LADWP project—and allowed Defendants to submit the $1.15 million bid on their own behalf.

**VII.    The disputed escrow amount held for the Bishop Paiute Tribe was not a factor in the negotiations with the**

Prior to 2008, the Bishop Paiute Tribe did not have an export license in the State of Nevada.  Due to the absence of this license, there was a question as to whether California or Nevada tax should apply when the tribe transported fuel over the state line.  Haycock Petroleum and the tribe came to an arrangement where Haycock Petroleum would hold approximately $300,000 in an escrow account while the tax situation was determined.  In or about 2008, this escrow account was set up and maintained by an attorney named John Durkin, who later was employed by Haycock Petroleum as its CFO.

Mr. Durkin resigned from his position with Haycock Petroleum and as the caretaker of the escrow account.  The account was then closed and the funds were released into the general funds of Thomas Petroleum, after it purchased the assets of Haycock Petroleum. The parties appear to continue to be waiting for California's Board of Equalization makes a final determination on the actual tax liability owed by the tribe.

Defendants claim that the Bishop Paiute Tribe has maintained ill-will over this escrow account and now distrusts Thomas Petroleum because of it.  The evidence will show that no voiced any feelings regarding the escrow account during negotiations between Thomas Petroleum's and the Bishop Paiute Tribe in or about early 2010.  Rather, this was and is an artifice of Kenneth Lloyd.

**Damages & Remedies**

**I.    Several remedies are available to Thomas Petroleum.**

The court has already adjudicated the matter of Defendants' use of the Eastern Sierra Oil name in the LADWP bid was wrongful.  There are several remedies available for a trademark or trade name violation:

---

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

(15 U.S.C.A. § 1117, subd. (a).)

## II.   Thomas Petroleum lost 80% of its profits due to Defendants' misconduct.

Steve Moore will testify at trial that Defendants' conduct had a significant impact on Plaintiff's profits.  In the year following Lloyd's departure, Plaintiff's profits in Bishop fell by 80%—from approximately $500,000 to $100,000 per year.   Defendants' own damages expert, Henry Kahrs, reaches similar results.

## III.   The damages related to the lease are readily calculable.

Plaintiff anticipates that the lessor will testify that she would not have raised Plaintiff's rent.  With that fact established, Mr. Moore can state to the jury how Plaintiff's new lease, and its 2% annual increase, adds up to nearly $30,000 in damages over 10 years.

## IV.   Thomas Petroleum may recover Kenneth Lloyd's salary and bonuses.

"An agent who, without the acquiescence of his principal, acts for his own benefit or for the benefit of another in antagonism to or in competition with the principal in a transaction is not entitled to compensation which otherwise would be due him." (*J. C. Peacock v. Hasko* (1961)196 Cal. App. 2d 353, 358.)   "[F]raud, bad faith, [or] gross misconduct . . . forfeits [the employee's] right to compensation for his services.   For

1  example, where an agent is guilty of concealment or nondisclosure of material facts relating

2  to the subject matter of the agency, he forfeits his right to compensation." (*Ibid.*)  Lloyd was

3  unjustly enriched by, and should forfeit, the wages and commissions/bonuses Thomas

4  Petroleum paid him while he was actually working for his own personal benefit.

5  **V.     The court may impose a constructive trust for E.S. Oil's future income**

6  **generated as a result of the wrongdoing.**

7        "One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit

8  of the owner."  (Cal. Civ. Code, § 2223.)  "One who gains a thing by fraud, accident,

9  mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she

10  has some other and better right thereto, an involuntary trustee of the thing gained, for the

11  benefit of the person who would otherwise have had it."  (Cal. Civ. Code, § 2224.)

12        "A constructive trust is a *remedy* used by a court of equity to compel a person who

13  has property to which he or she is not justly entitled to transfer it to the person entitled to it.

14  The trust is passive, the only duty being to convey the property."  (13 Witkin, Summary Cal.

15  Law (10th ed. 2005) Trusts, § 319, p. 892.)  "In California, as in most jurisdictions, an action

16  in equity to establish a constructive trust does not depend on the absence of an adequate

17  legal remedy."  (*Heckmann v. Ahmanson* (1985) 168 Cal.App.3d 119, 134 [214 Cal.Rptr.

18  177].)  "Thus, under a constructive trust upon money, the plaintiff is entitled to trace the

19  fund to its ultimate product or profit."  (*Ibid.*)

20        A constructive trust is an available remedy for fraud, breach of fiduciary duty,

21  intentional interference, or unjust enrichment.  (*Lund v. Albrecht* (9th Cir. 1991) 936 F.2d

22  459, 464.)  In that case, the district court awarded to the plaintiff a 50% interest in

23  defendant's excess profits from a particular property.  (*Ibid.*)  The appellate court

24  determined that, "Such a measure of damages is justified because [plaintiff] is entitled to

25  recover a money judgment for all losses occasioned by [defendant's] breach of fiduciary

26  duty, regardless of whether such losses were anticipated. [Citations.] Further, under

27  California law, the remedy of constructive trust is also available against a defendant to

28  ///

1   prevent unjust enrichment. Hence, a breaching co-partner is required to account for all

2   profits or benefits, even if the other co-partner has not suffered a loss. [Citations.].)  (*Ibid*.)

3          It is appropriate in this case for the court to impose a constructive trust on all of the

4   Defendants' profits stemming from the LADWP or Paiute Tribe contracts.  (See, *GHK*

5   *Assoc. v. Mayer Group, Inc.* (1990) 224 Cal. App. 3d 856, 879-80 ("…it is not the *Property*,

6   but rather the rents and profits derived from the Project, on which the constructive trust has

7   been imposed.").)

8   **VI.    The court may enjoin the use of names.**

9          "The several courts vested with jurisdiction of civil actions arising under this chapter

10  shall have power to grant injunctions, according to the principles of equity and upon such

11  terms as the court may deem reasonable, to prevent the violation of any right of the

12  registrant of a mark registered in the Patent and Trademark Office or to prevent a violation

13  under subsection (a), (c), or (d) of section 1125 of this title."  (15 U.S.C.A. § 1116, subd.

14  (a).)    Following the ruling on the motion for summary judgment, Thomas Petroleum is

15  entitled to a permanent injunction against Defendants from further infringing or using the

16  trademark *Eastern Sierra Oil*.

17  **IV.    Thomas Petroleum did not unreasonable fail to do business with E.S. Oil after**

18  **the wrongdoings.**

19         California law holds that a plaintiff who suffers damage as a result of either a breach

20  of contract or a tort has a duty to take reasonable steps to mitigate those damages and will

21  not be able to recover for any losses which could have been avoided.  (*Valle de Oro Bank*

22  *v. Gamboa* (1994) 26 Cal.App.4[th] 1686, 1691 [32 Cal.Rptr.2d 329].)  "A plaintiff cannot

23  recover for damages avoidable through ordinary care and reasonable assertion."  (*Ibid*.)

24  "The duty to mitigate damages does not require an injured party to do what is unreasonable

25  or impracticable.  'The rule of mitigation of damages has no application where its effect

26  would be to require the innocent party to sacrifice and surrender important and valuable

27  rights.'"  (*Ibid.*)

28  ///

1
2
3

The burden of proving that losses could have been avoided by reasonable effort and expense belongs to the party who has broken a contract.  (*Brandon & Tibbs v. George Kevorkian Accountancy Corp.* (1990) 226 Cal.App.3d 442, 460 [227 Cal.Rptr.40].)

4
5
6
7
8
9
10
11
12
13

Mitigation is grounded on equitable percepts and a trial court can "prevent mitigation" when it is inequitable to do otherwise. (*Dakota Gardens Apartment Investors B v. Pudwill* (1977) 75 Cal.App.3d 346, 354 [142 Cal.Rptr. 126].)  In that case, founded upon a conversion, the California Court of Appeal found that the trial court had sufficient reasons upon which to deny mitigation.  (*Ibid.*)  "To allow mitigation by application of the converted property to the benefit of the injured party would result in the converter dictating to the owner how the owner's property is to be used. Such a result would seriously weaken the concept of property ownership because a defendant would not be penalized for interfering with another person's possessions if the ultimate offset of the interference resulted in a benefit to that person."  (*Id.* at p. 353.)

14

## Conclusion

15
16
17
18
19
20
21

This is a straightforward case.  Plaintiff contends that Kenneth Lloyd misused his position as terminal manager and betrayed the trust of Thomas Petroleum's leaders. Defendants contend that Thomas Petroleum sat on its interests in the Bishop Area, sitting uninterested in another state.  The evidence will show that Mr. Lloyd is not credible witness on his own behalf, and that there are several glaring examples of disloyalty.  Since the court has already adjudicated in favor of Plaintiff in one respect, the focus of this trial may be more on damages than liability.

22

DATED: November 26, 2012

23
24

EMERSON, COREY, SORENSEN
CHURCH & LIBKE

25
26
27
28

BY:   /s/ James D. Emerson
James D. Emerson
Attorney for Plaintiff, THOMAS
PETROLEUM, LLC d/b/a EASTERN
SIERRA OIL