Erik Gunderson Bar No. 171982
CHARLTON WEEKS LLP
1031 West Avenue M-14, Suite A
Palmdale, CA  93551
Phone: (661) 265-0969
Erik@CharltonWeeks.com

Attorneys for Defendants Kenneth Lloyd and E.S. Oil, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS PETROLEUM, LLC d/b/a EASTERN SIERRA OIL,<br><br>    Plaintiff,<br><br>    v.<br><br>KENNETH LLOYD, an individual, E.S. OIL, LLC, a California limited liability company, and DOES 1-30, Defendants<br><br>    Defendants. | CASE NO.  1:11-CV-00902-LJO-JLT<br><br>DEFENDANTS' TRIAL BRIEF<br><br>Date: November 19, 2012<br>Time: 8:30 a.m.<br>Department 4<br>Hon. Lawrence J. O'Neill |

1.   INTRODUCTION

   This case is one driven by emotion rather than economics. The plaintiff, a multi-million dollar oil company from Texas, bought a small (for the plaintiff) operation of another oil company in Bishop, California out of bankruptcy in 2009. The local key man, defendant Kenneth Lloyd, had been involved in the oil

1
DEFENDANTS' TRIAL BRIEF

business in Bishop since he had been a child, having learned the oil trade from his father and his grandfather. Lloyd grew dissatisfied with the way the new employer was running things. Off and on over the course of several months before he left, he considered moving on and doing other things or perhaps noncompetitive side work, and eventually he offered to buy out the Bishop operations from the plaintiff. He truly believed, in retrospect naïvely, that such a deal could have been negotiated. He truly believed, in retrospect naïvely, that his years of experience, origination of the name of the business, would count for something. As it turned out, two customers followed him. Now, the plaintiff is slightly less profitable.

Quite a large number of the events leading up to Lloyd's departure and creation of an independent company competing with the plaintiff are not disputed. The plaintiff will attempt to portray them in a sinister light but the evidence will show that nearly all of these events were neither a part of any sort of grand plan to harm the plaintiff, nor wrongful in any way. Much of what the plaintiff points to as a purportedly orchestrated plan are acts which are simply not wrongful and are within the scope of what an employee, contemplating leaving his employment and going in to business for himself, may do to prepare for that career move. *Fowler v. Varian Associates, Inc.*, 196 Cal.App.3d 34, 41 (1987), *Bancroft-Whitney Co. v. Glen*, 64 Cal.2d 327, 345-347 (1966), *Mamou v. Trendwest Resorts, Inc.*, 165 Cal.App.4th 686, 719-720 (2008), *Industrial Indemnity Co. v. Golden State Co.*, 117 Cal.App.2d 519, 533 (1953). What the case will come down to are three isolated events.

A.   BISHOP PAIUTE INDIAN TRIBE

First, the plaintiff claims that one of the two customers who followed Lloyd to his new company, the Bishop Paiute Indian Tribe, did so by way of a pitch for business that was begun while Lloyd was employed by the plaintiff and which was still pending when he left. The evidence will show, however, that the opportunity for the plaintiff to have done this business failed despite Lloyd's best efforts.

This would-be customer was averse to a long-term contract and Lloyd's second-line supervisor, Steve Moore, instructed Lloyd to either get a ten-year contract or nothing. Taking Moore at his word, Lloyd pursued the deal as far as it could be done, saw the possibility for a shorter-term deal, but determined that the plaintiff wanted what Moore had said it did – a ten-year contract, or nothing.

A deal was finally signed by the Tribe two weeks before Lloyd wound up quitting, and Lloyd only signed it for himself after he was no longer a Thomas employee. Even thereafter, Lloyd would have been willing to have used the plaintiff as a subcontractor (or "jobber" as the phrase is used in the industry) had the instant litigation not broken out within weeks of his departure. No one from Thomas has done anything substantial to recapture this business in the eighteen months since Lloyd's termination.

Ultimately, the Bishop Paiute Indian Tribe identified another supplier and another transporter of its fuel. Lloyd continues to be paid small amounts on his contract, but had he not negotiated that contract, there would be no business – zero – from this customer today, and Thomas would be making no money at all from this customer.

3
DEFENDANTS' TRIAL BRIEF

Second, a bid was submitted to the other disputed customer, the Los Angeles Department of Water and Power, about two months before Lloyd quit. The evidence will show that Lloyd proffered the opportunity to submit the bid for this work to the plaintiff, requesting that Steve Moore either sign or obtain the appropriate signatures to sign, the bid. Moore failed to get these signatures. Lloyd waited until the last possible day to submit the bid on behalf of his own company, requesting signatures repeatedly. However, the failure of Thomas to sign the bid when it was offered to it could only be reasonably interpreted that the company was passing on the opportunity to do this business that Lloyd had identified for it to do. Lloyd then submitted the bid on behalf of his own company. Even so, he named Thomas as a possible subcontractor on the bid so as to preserve the right of the plaintiff to do this business.

Between these two customers, Thomas has lost some profit. Had Lloyd stayed on, however, Thomas would have had to have paid Lloyd's salary and structured commissions, and would have been in nearly the same financial shape it is today. The difference between Thomas' current financial position and the position it would have been had Lloyd stayed on is anticipated to be in the tens, not the hundreds, of thousands of dollars. The difference between where Thomas is today and where it could have been had it sought to recapture the business Lloyd was willing to offer it is anticipated again to be in the tens, not the hundreds, of thousands of dollars.

Finally, at a time that he thought he would be buying Thomas out of its Bishop operations, he negotiated a lease for the physical location where Thomas was set up, a location about two short blocks from his own home. The lease he negotiated locked in occupancy for the premises for a long period of time, at a rate very similar to the rate Thomas was paying on the then-periodic lease. Lloyd

made up the minimal balance out of his own company's coffers. Thomas was never asked to move, never paid more money than it had been paying prior to the lease renegotiation, and suffered no damage at all because of anything Lloyd did. Thomas could not bear the thought of the lease being in the name of Lloyd's company, however, despite the fact that no one ever asked it to pay a penny more in rent than it ever had and no one ever asked it to move. So it negotiated a new lease with the landlord, paying a nominally greater amount of money. But no one required it to do so and it was not reasonable that it do so.

Finally, Lloyd himself has not made a substantial amount of profit while pursuing self-employment. He is now taking home less money than he did while he was a Thomas employee. He cannot meet his personal financial obligations and should a substantial judgment be entered against him, will have to consider relief from his debtors (including Thomas) by way of declaring bankruptcy. Thomas knows this, as Lloyd's financial records have been disclosed during discovery.

The total amount of money at stake here is relatively small, both in terms of purportedly lost profits and purported unjust enrichment. Mitigation and recovery efforts would have been simple and efficient to pursue, but have not been. Instead, they have spent hundreds of thousands of dollars prosecuting a lawsuit to purportedly recapture tens of thousands of dollars, knowing that its opportunity to shift attorney's fees will be limited if present at all, and knowing that its ability to actually collect on a judgment will be severely truncated, if not ultimately discharged. Clearly, Thomas' objectives are not making itself whole, but rather realizing revenge upon Lloyd for quitting, and instilling fear in its other employees by making an example of Lloyd.

2.   CAUSES OF ACTION

Thomas presents a massive suite of causes of action to the court. They all come down to the same three things: the lease, the Indians, and the LADWP.

A.  **BREACH OF FIDUCIARY DUTY, BREACH OF DUTY OF LOYALTY**

Thomas presumably will seek to claim that all three disputed issues – the lease, the Indians, and the LADWP – are addressed by this claim. To prevail, the plaintiff must prove that Lloyd acted in a fashion adverse to Thomas' interests, during the time he was employed by Thomas. The jury must examine all of the facts of the situation. *Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 29. In a regular employment situation, there is no fiduciary duty. *Calvao v. Superior Court* (1988) 201 Cal.App.3d 921, 923. See also Labor Code § 2750.

B.  **TRADE SECRETS**

Thomas presumably will seek to claim that all three disputed issues – the lease, the Indians, and the LADWP – are addressed by this claim. To prevail, the plaintiff must prove the following elements of the case, each by a preponderance of the evidence:

  1. That Thomas Petroleum, LLC owned particular information and documents;

  2. That this information and these documents were trade secrets at the time of the misappropriation;

  3. That Defendants improperly acquired and used the trade secrets;

  4. That either Thomas Petroleum, LLC was harmed or Defendants were unjustly enriched; and

5. That Defendants' acquisition and use was a substantial factor in causing Thomas Petroleum, LLC's harm Defendants to be unjustly enriched.

Civil Code § 3426.1. Importantly, the plaintiff must show that the information has independent economic value; it must be "sufficiently valuable and secret to afford an actual or potential economic advantage over others." *Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 564–565. So while Thomas may be irritated that Lloyd had a profit and loss statement from 2009, this does not mean that Lloyd derived any particular utility from that document. Thomas must show how this document was useful and gave Lloyd an ability to outcompete Thomas.

### C.   INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

Thomas presumably will seek to claim that all three disputed issues – the lease, the Indians, and the LADWP – are addressed by this claim. To prevail, the plaintiff must prove the following elements of the case, each by a preponderance of the evidence:

### D.   INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

Thomas presumably will seek to claim that all three disputed issues – the lease, the Indians, and the LADWP – are addressed by this claim. To prevail, the plaintiff must prove the following elements of the case, each by a preponderance of the evidence:

### E.   TRADEMARK (STATE AND FEDERAL); UNFAIR COMPETITION

Liability has been determined as to Lloyd's use of the mark "Eastern Sierra Oil" on the LADWP bid. This claim has been abandoned as to all other claims.

Defendants dispute that the use of this mark on the LADWP bid had any material impact upon its being awarded to Lloyd's company as opposed to Thomas. Rather, as Thomas' own executives admit, the reason this bid was awarded to E.S. Oil instead of Thomas was that Thomas failed to submit a bid at all. Causation of damages is as important as liability here – the infringement must show that profits accrued to the defendant, and were lost by the plaintiff, because of the infringement. *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993). If no losses or profits can be thus identified, nominal damages are appropriate.

### F.   FRAUD AND MISREPRESENTATION

Remarkably, although the evidence shows that Lloyd was an effective terminal manager who delivered profit to Thomas during his tenure there, Thomas says that Lloyd was working on his own behalf and not for it during his employment, and therefore seeks to make Lloyd pay back the salary and commissions he earned. To prove this claim, the plaintiff must prove by clear and convincing evidence:

1. (a) That Mr. Lloyd was a fiduciary of Thomas Petroleum, LLC in his capacity as a terminal manager; and

   (b) That Mr. Lloyd intentionally failed to disclose an important fact to Thomas Petroleum, LLC;

2. That Thomas Petroleum, LLC did not know of the concealed fact;

3. That Mr. Lloyd intended to deceive Thomas Petroleum, LLC by concealing the fact;

4. That Thomas Petroleum, LLC reasonably relied on Mr. Lloyd's deception;

5. That Thomas Petroleum, LLC was harmed; and

6. That Mr. Lloyd's concealment was a substantial factor in causing Thomas Petroleum, LLC's harm.

*Limandri v. Judkins* (1997) 52 Cal.App.4th 326, 336–337. Importantly, the "intentionally failed to disclose an important fact" element applies only when a fiduciary relationship exists. *Magpali v. Farmers Group, Inc.* (1996) 48 Cal.App.4th 471, 482.

G.   CONVERSION

This claim appears to apply only to the lease. To prove this claim, the plaintiff must prove by a preponderance of the evidence:

1. That Thomas Petroleum, LLC owned a lease;

2. That Defendants intentionally and substantially interfered with Thomas Petroleum, LLC's lease by taking possession of it, preventing Thomas Petroleum, LLC from having access to it, destroying it, or refusing to return it after Thomas Petroleum, LLC demanded its return;

3. That Thomas Petroleum, LLC did not consent;

4. That Thomas Petroleum, LLC was harmed; and

5. That Defendants' conduct was a substantial factor in causing Thomas Petroleum, LLC's harm.

*Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1507.

### H. UNJUST ENRICHMENT

This claim appears to apply to the two disputed customers. To prove this claim, the plaintiff must prove by a preponderance of the evidence that one or both defendants received something that but for their wrongful conduct, they would not have received. Civil Code § 3426.3.

## 3. DEFENSES

The defendants will prove up two affirmative defenses: abandonment of business opportunity and failure to mitigate.

### I. ABANDONMENT OF OPPORTUNITY

As to the LADWP and the Bishop Paiute Indian Tribe, Thomas Petroleum abandoned the opportunity to do business with the customers on the terms available at the time. If Lloyd presented them to Thomas Petroleum and Thomas Petroleum then did abandon these opportunities, then Lloyd was free, under all legal theories, to exploit them for himself. *Dryden v. Tri-Valley Growers* (1977) 65 Cal.App.3d 990. An opportunity to do business is like any other asset of a business and once is is abandoned, it is forfeit and available to anyone to claim. While "mere passivity" is not enough to abandon, a jury may and should look at the facts surrounding the abandonment of the property in question. *UMG Recordings, Inc. v. Augusto* (C.D. Cal. 2008) 558 F.Supp.2d 1055, 1064:

Intent to abandon is determined based on "consideration of all the circumstances of the case," including all "acts of ownership and dominion, or a want of such acts." *Moon v. Rollins,* 36 Cal. 333, 338–40 (1868). "Abandonment may arise from a single act or a series of acts." *Pickens v. Johnson,* 107 Cal.App.2d 778, 238 P.2d 40, 45 (Ct.App.1951). One has intent to abandon when one relinquishes possession "without any present intention to repossess." *Utt v. Frey,* 106 Cal. 392, 397, 39 P. 807 (1895).

### J. FAILURE TO MITIGATE

As to all three areas of dispute, Thomas Petroleum failed to take reasonable opportunities available to it to mitigate its damages. Thomas failed to compete for the Indians' business. Thomas failed to seek opportunities to subcontract the lost work. Thomas failed to simply continue paying its previous lease payments. Lloyd bears the burden of demonstrating that reasonable effort and expense could have achieved a mitigation of damages, and how much could have been thus recovered. *Brandon & Tibbs v. George Kevorkian Accountancy Corp.* (1990) 226 Cal.App.3d 442, 460-461. If reasonable efforts would have mitigated the damages, then plaintiff's recovery is reduced by the amount that those efforts would have reduced the losses suffered. *Binder v. Disability Group, Inc.* (C.D. Cal 2011) 772 F.Supp.2d 1172, 1184.

## 4. CONCLUSION

There is more emotion than money at stake here; there is more sound and fury than substance and harm. Thomas Petroleum never stopped being profitable.

November 26, 2012         /s/ Erik Gunderson
                          Attorneys for Defendants Kenneth Lloyd
                          and E.S. Oil, LLC

PROOF OF SERVICE

I am employed in the county Los Angeles, State of California; I am over eighteen years of age and not a party to the within action; my business address is 1031 West Avenue M-14, Suite A, Palmdale, California, 93551.

On November 9, 2012, I served the document(s) described as:

DEFENDANTS' MOTION IN LIMINE NO. 2 TO EXCLUDE PLAINTIFF'S CUMULATIVE TESTIMONY OF UNCONTESTED EVENTS

on all interested parties in this action by placing a true copy thereof enclosed in sealed envelope addressed as follows:

| | |
|---|---|
| Donna M. Rutter, Mani Sheik<br>Miller Law Group<br>111 Sutter Street, Suite 700<br>San Francisco, CA 94104 | James Emerson<br>Emerson, Corey, Sorensen, Church & Libke<br>2520 W. Shaw Lane, Suite 102<br>Fresno, CA 93711-2765 |

Said mailings were sent via first-class United States mail, with posted fully prepaid thereon. Service was also accomplished through the Court's electronic filing system.

I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processes is deposited with the United States Postal Service that same day in the ordinary course of business.

I also caused this document to be transmitted to the above at their e-mail addresses,

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on November 9, 2012, at Palmdale, California.

              _____
              Gayle Fenald